UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY L. PERRITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | No. 07-CV-188-SAJ |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff asserts that (1) the ALJ failed to make a proper determination at Step Five of the five step sequential evaluation process; (2) the ALJ failed to properly consider the opinion of the treating physician, the examining sources, and the reviewing sources; and (3) the ALJ failed to make a proper credibility determination. For the reasons set forth below, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

**1. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff, Mary L. Perritt, was born on February 13, 1959, and was 41 at the time of her alleged disability onset date. [R. 513]. She has her General Educational Development ("GED") certificate, as well as additional training in tax preparation. [R. 97]. Additionally, she has obtained 95 hours of college credit. [R. 867]. Previously, she worked as an

---

[1] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

accounting clerk, tax preparer, cashier, housekeeper and lawn care maintenance. [R. 92]. Plaintiff alleges she has been disabled since December 5, 2000, due to depression, anxiety disorders, seizures, constant flu-like symptoms and schizioaffective disorder. [R. 91]. She was hospitalized in 1988, where she was first diagnosed as having depression. [R. 361-363]. She currently goes to therapy and takes medication for her mental disorders. [R. 96, 399]. When she feels well, she attempts to attend school. [R. 753-756]. However, her impairments have caused her to stop going to school. [R. 692, 752, 753].

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on February 1, 2001. [R. 76-78]. She later filed an application for supplemental security income on April 30, 2001. [R. 400-403]. In both of her applications, she alleged disability beginning on December 5, 2000. [R. 76, 401]. The Commissioner initially denied her applications on August 13, 2001, [R. 52 ] and on reconsideration, denied them again on November 1, 2001. [R. 57]. Plaintiff then filed a Request for Hearing Before an ALJ on November 20, 2001, [R. 60] and ALJ Stephen C. Calvarese held a hearing on January 27, 2003. [*See* R. 449-491]. On May 9, 2003, ALJ Calvarese concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time through the date of his decision. [R. 31]. Plaintiff subsequently filed a Request for Review of Hearing Decision on May 20, 2003, [R. 13] and the Appeals Council denied her request on July 14, 2004. [R. 6].

Plaintiff then sought judicial review in the United States District Court for the Northern District of Oklahoma. On August 8, 2005, the district court reversed and remanded the Commissioner's final decision for further proceedings. [*See* R. 553-562]. By order, the Appeals Council remanded the case to an ALJ. [R. 565]. On remand, ALJ

John Volz held a hearing on March 23, 2006, [*See* R. 841-874] and a supplemental hearing on November 9, 2006. [*See* R. 811-840]. On December 4, 2006, ALJ Volz concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from December 5, 2000, through the date of his decision. [R. 514]. The Appeals Council declined review on February 2, 2007. [R. 492-494]. Plaintiff now seeks judicial review of the Commissioner's final decision in 2006.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. §§ 404.1520, 416.920. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[2]

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521, 416.972. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age,

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary [3] as to any fact, if supported by substantial evidence, shall be conclusive, . . ." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed

---

education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

[3] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L No. 103-296. For the purposes of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner".

by other evidence in the record. *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### 3. ADMINISTRATIVE LAW JUDGE'S DECISION

In his 2006 decision, the ALJ determined that (1) Plaintiff met the insured status requirements of the Social Security Act through September 30, 2001; (2) Plaintiff has not engaged in any substantial gainful activity since December 5, 2005, the alleged onset date of her disability; (3) Plaintiff's schizioaffective disorder, anxiety and depression are considered "severe"; (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (5) Plaintiff has the residual functional capacity ("RFC") to do a range of light work, as she able to perform simple tasks with routine supervision and to interact appropriately with co-workers and supervisors and retains the ability to make independent plans, but is moderately limited in her ability to accept instructions and to respond to criticism appropriately; (6) Plaintiff is unable to perform any of her past relevant work; (7) Plaintiff is a younger individual who has at least a high school education and is able to communicate in English; (8) transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not the claimant has transferable job skills; and (9) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national

economy that Plaintiff can perform. [R. 510-514]. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined by the Social Security Act, from December 5, 2000, through the date of his decision. [R. 514].

## 4. REVIEW

### A. Conflict Between VE Testimony and the DOT

In Plaintiff's first assignment of error, she alleges that the ALJ failed to make a proper determination at Step Five of the five step sequential evaluation process. Specifically, she contends that the ALJ neglected to ask the vocational expert ("VE") if his testimony was compatible with the Dictionary of Occupational Titles ("DOT"). Moreover, she argues that the VE's testimony conflicts with the DOT and the jobs stated by the VE exceed the limitations of her RFC as assessed by the ALJ. An ALJ is required to "investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999).

At the hearing, the ALJ presented Glen Marlowe, the VE, with a hypothetical situation involving a hypothetical person that was Plaintiff's age, had the same educational background and work history, who could do a range of light work, confined to simple tasks with routine supervision, and was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors and set realistic goals or make plans independently of others. [R. 836]. When questioned regarding whether there were jobs in the regional or national economy that such a person could perform, the VE responded

that "most of the light, unskilled, sedentary jobs would be available with that [sic] limitations." *Id.* When questioned regarding the number of those jobs, he responded that:

> In the light, unskilled range, there's cashier jobs such as a cafeteria cashier or self service gas attendant. There's 400 of those in Oklahoma which is the region, 48,000 in the US. There's jobs like messenger, office helper, that type of thing, 900 in Oklahoma, 112,000 in the US. There's unskilled mail clerk jobs. These would be like in an office setting where they sort and put up mail, 400 in Oklahoma, 48,000 in the US. There's jobs like arcade attendant, 700 in Oklahoma, 67,000 in the US. Some examples in the sedentary, unskilled, there's jobs like food order clerks, 350 in Oklahoma, 40,000 in the US. There's assembly jobs, unskilled assembly jobs, 1,200 in Oklahoma, 93,000 in the US.

*Id.*

The ALJ stated in his decision that the VE's testimony was consistent with the information provided in the DOT. [R. 514]. However, at the hearing, he never asked the VE whether the job information he provided conflicted with the information provided in the DOT. [*See* R. 811-840]. When a VE testifies "about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that [testimony] and information provided in the DOT." *Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Determinations*, SSR 00-4p, 2000 WL 1898704 at \*4 (S.S.A. December 4, 2000).[4] "[A]s part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." *Id.* at \*2; *see also Cooper v. Barnhart*, No. 03-CV-775-J, 2004 WL

---

[4]Although Social Security rulings do not carry the force of law, they are generally entitled to deference because "they constitute the Social Security Administration's interpretations of its own regulations and the statute which it administers." *Walker v. Sec'y of Health & Human Servs.*, 943 F.2d 1257, 1259-60 (10th Cir. 1991).

2381515 at *4 (10th Cir. Oct. 15, 2004) (unpublished) (SSR 00-4p "clarifies that the ALJ has the duty to question the vocational expert").

The DOT gives the definitions for the six levels of reasoning development. Level one provides that the person can "apply commonsense understanding to carry out simple one- or two-step instructions [and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." U.S. Dept. of Labor, Employment and Training Administration, *Dictionary of Occupational Titles*, Appendix C, 1011 (4th ed., rev. 1991). Level two requires the person to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* Level three requires the person to "apply commonsense understanding to carry instructions furnished in written, oral or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." *Id.* The jobs of cafeteria cashier, mail clerk, and food order clerk, which the VE testified that Plaintiff could do, have a reasoning level of R3.[5] The VE also testified that Plaintiff could work as an office helper, arcade attendant, and fishing-reel assembler, which all have a reasoning level of R2.[6]

As part of his assessment of Plaintiff's RFC, the ALJ concluded that she was able to perform "simple routine tasks with routine supervision." [R. 510]. Plaintiff contends that her RFC is inconsistent with the demands of the jobs identified by the VE and that her RFC more closely resembles jobs requiring a reasoning level of R1. However, a limitation "for

---

[5] *See Dictionary of Occupational Titles*, 211.642-010(cashier), 209.687-026(mail clerk), and 209.567-014(food order clerk)

[6] *See Dictionary of Occupational Titles*, 239.567-010(office helper), 242.667-014(arcade attendant), and 732.684-062(fishing reel assembler)

simple and routine work [is] inconsistent with the demands of level three reasoning but consistent with the demands of level two reasoning . . ..." *Stokes v. Astrue*, No. 07-5046, 2008 WL 1766788 at *8 (10th Cir. April 18, 2008) (internal quotations omitted) (unpublished)[7]; *see also Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).  Thus, there is a conflict between the VE's testimony and the information in the DOT regarding jobs requiring a reasoning level of R3, but no conflict with regards to the jobs requiring a reasoning level of R2.

In this case, the ALJ relied upon the testimony of the VE to support his conclusion that Plaintiff could perform work in the national economy.  Plaintiff has identified several apparent conflicts between the testimony of the VE and the information contained in the DOT.  In particular, she points to the jobs of cafeteria cashier, mail clerk, and food order clerk, which were identified by the VE as jobs she could perform.  Each of these jobs have a reasoning level of R3, which is incompatible with the ALJ's determination that Plaintiff was limited to simple routine tasks with routine supervision.  These conflicts were not identified at the hearing.  Additionally, the record shows that the ALJ never asked the VE if any conflicts existed between his testimony and the DOT.  [*See* R. 811-840].  The Social Security Administration's rulings clearly place the burden on the ALJ to inquire whether any conflicts exist between the evidence provided by the VE and the information in the DOT, and if conflicts do exist, to resolve them.  *SSR 00-4p* at *4.

---

[7]The Court recognizes that "[u]npublished decisions are not precedential, but may be cited for their persuasive value." 10 Cir. R. 32.1. The Court has not been able to find a case more on point in the opinions of the Tenth Circuit discussing whether a limitation to "simple, routine work" is consistent with level two reasoning.

The Commissioner argues that the ALJ's failure in this regard is a harmless error, as some of the jobs identified by the VE have reasoning levels that correspond with Plaintiff's RFC. However, this argument fails to address the fact that the ALJ failed to comply with the Social Security Ruling that places a duty on him to inquire, on the record, if any conflicts exist, and if conflicts do exist, to resolve them. Because the ALJ never made this inquiry, the Court can only speculate that the VE was relying on the DOT when he gave his testimony. To conclude that the VE was relying on the DOT would risk violating the general rule against post hoc justification of administrative action and require the Court "to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Thus, the ALJ's failure in this case to inquire about and resolve any conflicts between the VE's testimony and the DOT is a legal error. Decisions should be free from legal error. *Brown v. Callahan*, 120 F.3d 1133, 1135 (10th Cir. 1997).

### B. Consideration of Treating Physician's Opinion

In Plaintiff's second assignment of error, she contends that the ALJ erred by failing to properly consider the opinion of the treating physician, the examining sources, and the reviewing sources. In particular, Plaintiff argues that the ALJ neglected to follow the correct legal standards in considering the Mental Residual Functional Capacity Assessment made by Dr. Brian Mooney, one of her treating physicians. Furthermore, she alleges that he erred when he failed to grant Dr. Mooney's opinion any weight or specify what weight, if any, have gave to it or any of the other opinions from other medical source statements.

The "treating physician rule" requires that the Commissioner generally give more weight to medical opinions from a treating source than to that of a non-treating source. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)). "The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *see Langley*, 373 F.3d at 1118; *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004); *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003).

If the ALJ concludes that the treating physician's opinion is not entitled to controlling weight, the inquiry does not end. The ALJ must then evaluate whether the treating source medical opinions are entitled to deference and the ALJ must weigh the treating opinion using all of the factors provided in §§ 404.1527, 416.927. *See Langley*, 373 F.3d at 1119; *Hamlin*, 365 F.3d at 1215 (ALJ must consider specific factors in determining what weight to give medical opinion). The factors which the ALJ should evaluate include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dep't. of Health and Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995); *See* 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).

Further, "[u]nder the regulations, the agency rulings, and our case law, an ALJ must give good reasons ... for the weight assigned to a treating physician's opinion," that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." *Watkins*, 350 F.3d at 1300 (quotations omitted). "[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Id.* at 1301 (quotations omitted).

In his decision, the ALJ laid out the evidence and medical statements he used to determine Plaintiff's RFC. This evidence included a Mental RFC Assessment made by Dr. Brian Mooney, one of Plaintiff's treating physicians at Associated Centers for Therapy, on April 24, 2003. In this report, Dr. Mooney opined that Plaintiff had severe, marked, or moderate limitations in every category relating to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. [R. 396-397]. He also noted that his evaluation was "based on the very short time" that he had known Plaintiff. *Id.* Attached to this report was a Mental Status Form, where Dr. Mooney diagnosed Plaintiff as having schizoaffective disorder, bipolar type, obsessive compulsive disorder, and panic disorder with agoraphobia. [R. 399].

After reviewing this report, the ALJ concluded that Dr. Mooney's opinion "cannot be granted controlling weight." [R. 511]. The ALJ found that Dr. Mooney's findings "were not well supported with acceptable clinical and diagnostic techniques." *Id.* He faulted Dr. Mooney for offering no indication of how he arrived at his conclusions, stating no MMPI or WAIS-III test scores, and offering no report that would substantiate any of the conclusions that he reached. *Id.* However, Dr. Mooney did supply a Mental Status Form, which he filled out on the same day that he made his assessment of Plaintiff's mental RFC. This

12

report contains a number of his observations of Plaintiff's symptoms and behavior as well as his diagnosis of her condition. [R. 398-399].

On the Mental Status Form, Dr. Mooney diagnosed Plaintiff as having a variety of mental impairments, including schizoaffective disorder, bipolar type. *Id.* He observed that Plaintiff's mood was anxious and that her affect was nervous and irritable. [R. 398]. He also commented that she appeared somewhat easily interrupted or distracted and that she appeared to have easily distracted thinking. *Id.* He opined that Plaintiff could remember, comprehend, and carry out simple instructions, but would have significant difficulty with complex ones. [R. 399]. Moreover, he was of the opinion that Plaintiff could not respond appropriately to work pressure, supervision, and co-workers over an extended period. *Id.* He also concluded that Plaintiff has a "chronic illness requiring life-long treatment" and that it was "difficult to determine an anticipated amount of improvement." *Id.*

In this case, Dr. Mooney's opinion of Plaintiff's mental status and his assessment of her RFC were based on his personal observation and evaluation of her symptoms contained in the Mental Status Form. "[A] psychological opinion may rest either on observed signs and symptoms or psychological tests." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)(citing 20 C.F.R. Subpart P, App. 1 § 12.00(B)). Dr. Mooney's observations and evaluation of Plaintiff's symptoms and limitations constitute specific medical findings which would support his opinion and mental RFC assessment. *See Washington v. Shalala*, 37 F.3d 1437, 1441 (10th Cir. 1994). Thus, the ALJ's assertion that Dr. Mooney's opinion is not supported by acceptable clinical and diagnostic techniques is not supported by substantial evidence.

However, as part of his rationale for not granting Dr. Mooney's opinion controlling weight, the ALJ found that Dr. Mooney was inconsistent with himself, as his Mental RFC Assessment "indirectly contradicts his progress report from a month before." [R. 511]. In that report, made on March 20, 2003, Dr. Mooney stated that Plaintiff was casually dressed and well groomed, her affect was anxious, her mood was nervous, and that she denied any suicidal/homicidal ideation or auditory or visual hallucinations. [R. 287]. Additionally, the ALJ observed that in that progress report, Dr. Mooney concluded that Plaintiff was doing well on her medications, was alert and oriented times four, and assessed her as having an Axis V score of 61/75.[8]  [R. 511].  In concluding that Dr. Mooney's reports indirectly contradicted each other, the ALJ noted that a GAF score of 75 "indicates no more than slight impairment in social, occupational, or school function."[9]  *Id.*

In this case, Plaintiff faults that ALJ for failing to note that on the progress report in question, Dr. Mooney had assessed her as having a GAF of 61 for that evaluation, rather than the 75 noted by the ALJ.  However, the ALJ's error in citing to the wrong GAF score from Dr. Mooney's evaluation is harmless, as there is still a fairly large disparity between Dr. Mooney's two evaluations.  A GAF of 61 only indicates "mild symptoms or some difficulty in social, occupational or school functioning, but generally functioning pretty well

---

[8]The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV")(Text Revision 4th ed. 2000) at 32.  In evaluating a patient's GAF score, the first number given is the score the clinician assess the patient's GAF as having after that evaluation, while the second number given is determinative of the patient's highest GAF score over the past year or other specified time period. *DSM-IV* at 32-33.

[9]A GAF of 71-80 indicates that "if symptoms are present, they are transient and expectable reactions to psychosocial stresses and no more than slight impairment in social, occupational, or school functioning." *DSM-IV* at 32.

14

. . .." *DSM-IV* at 32. Dr. Mooney's assessing Plaintiff as having a GAF score of 61 would seem to contradict his Mental RFC Assessment where he indicated that Plaintiff had severe, marked, or moderate limitations in her understanding and memory, sustained concentration and persistence, social interaction, and adaptation. [R. 396-397]. Thus, in finding that Dr. Mooney's Mental RFC Assessment was inconsistent with his other reports, the ALJ offered a specific, legitimate reason for rejecting it. *See Watkins*, 350 F.3d at 1301.

The ALJ also concluded that Dr. Mooney's Mental RFC Assessment was inconsistent with the record as a whole "in that no other source so limits the claimant's mental capacities." [R. 511]. Later in his decision, the ALJ discussed a psychological evaluation made by Dr. Minor W. Gordon, a consultative examiner. On May 9, 2006, Dr. Gordon conducted a psychological examination of Plaintiff, and as part of that examination, assessed her mental RFC. [R. 763-765]. He concluded that she was only moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors and to set realistic goals and make plans independent of each other. *Id.* In all other areas, Dr. Gordon noted that she had either no limitation or no significant limitation. *Id.* This assessment directly conflicts with the one provided by Dr. Mooney.

Plaintiff does not argue that Dr. Gordon's assessment is inconsistent with Dr. Mooney's, but she does argue that Dr. Gordon's report is internally inconsistent. In reviewing a report from a consultative examiner, an ALJ should consider '[w]hether the report is internally consistent . . .." *20 C.F.R. §§ 404.1519p(a)(2), 416.919p(a)(2)*. As part of his evaluation, Dr. Gordon performed a Beck Anxiety Inventory and a Beck Depression Inventory on Plaintiff, which indicated that she suffered from a severe level of anxiety and

15

extremely severe level of depression. [R. 760]. He also performed a Minnesota Multiphasic Personality Inventory II examination, which indicated moderate levels of anxiety and depression. *Id.* Despite this, Dr. Gordon was of the opinion that Plaintiff "should be able to perform some type of routine, repetitive task on a regular basis." [R. 761].

Plaintiff points to this as a specific inconsistency in the report. However, in determining whether a claimant is disabled, the focus is not on the diagnosis, but rather on the extent to which claimant's limitations prevent her from maintaining regular employment. *See Bernal v. Bowen*, 851 F.2d 297, 301 (10th Cir. 1988). In this case, despite concluding that Plaintiff had anxiety and depression, Dr. Gordon felt that these impairments "should not preclude her from gainful employment." [R. 761]. Therefore, Dr. Gordon was not being inconsistent in his evaluation of Plaintiff's impairments and limitations. The ALJ correctly relied on this report in determining that Dr. Mooney's mental RFC assessment was inconsistent with the record as a whole. Thus, the ALJ provided another specific, legitimate reason why he rejected that report. *See Watkins*, 350 F.3d at 1301.

Finally, Plaintiff argues that even if the ALJ did not give Dr. Mooney's opinion controlling weight, it was still entitled to some weight and faults the ALJ for not considering all the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. However, the Tenth Circuit recently held that an ALJ is not required to explicitly apply each of the six relevant factors in deciding what weight to give a medical opinion. *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). The ALJ explained his reasons for not giving Dr. Mooney's opinion controlling weight: (1) it was not based on acceptable clinical and diagnostic techniques; (2) it was inconsistent with other evidence; and (3) it was inconsistent with his other reports. While the ALJ's assertion that the opinion was not based on acceptable clinical and

diagnostic techniques is not supported by substantial evidence, his determination that it was inconsistent with other evidence is supported by substantial evidence. This provided a specific, legitimate basis for the ALJ to correctly reject Dr. Mooney's opinion. *See Goatcher*, 52 F.3d at 290.

### C. Credibility Determination

In her final assignment of error, Plaintiff argues that the ALJ failed to properly assess her credibility. Determinations of a claimant's credibility are the province of the ALJ, and courts will not disturb such determinations when they are based on substantial evidence. *Hackett v. Barnhart*, 395 F.3d 1169, 1173 (10th Cir. 2005). Additionally, an ALJ's credibility determinations should be closely and affirmatively linked to substantial evidence rather than a conclusion in the guise of findings. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). However, *Kepler* does not require a formalistic factor-by-factor recitation of the evidence, and as long as the ALJ sets forth specific evidence that he relies upon in evaluating a claimant's credibility, the requirements of *Kepler* are satisfied. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

In this case, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." [R. 513]. He notes Plaintiff's statements about her problems with memory and concentration were not substantiated by the evidence, specifically citing to Dr. Gordon's report. *Id.* Dr. Gordon indicated that she had no limitation in remembering work-like procedures or in understanding, remembering, and carrying out very short and simple instruction. [R. 763-764]. He felt that Plaintiff's issues regarding her memory were "more

17

an issue of preoccupation" rather than a true short term memory problem. [R. 760]. Additionally, Dr. Gordon found that Plaintiff had no significant limitation in understanding, remembering, and carrying out detailed instructions or in maintaining attention and concentration for extended periods. *Id.* Accordingly, the ALJ's conclusions in this case are both closely and affirmatively linked to substantial evidence in record, and the Court sees no need to depart from his determination. *See Hackett* 395 F.3d at 1173.

Nonetheless, because the Court has determined that the ALJ failed to inquire about and resolve any conflicts between the testimony of the VE and the information provided in the DOT, the Court must reverse.

## 5. CONCLUSION

The Commissioner's decision denying Plaintiff's application for Social Security benefits does not apply the proper legal standards and is not supported by substantial evidence. Accordingly, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

It is so ordered this 11th day of August, 2008.

Sam A. Joyner
United States Magistrate Judge